UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ROBERT S. BIRCH,

                        Plaintiff,

                                **MEMORANDUM & ORDER**
           v.                            14–CV–03745 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

----------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Plaintiff Robert Birch ("Birch" or "Plaintiff") commenced this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of his claim for Social Security Disability Benefits. (Dkts. 6–8.) The Commissioner moves for judgment on the pleadings, affirming his decision. Fed. R. Civ. P. 12(c); (Dkt. 13). For the reasons set forth below, the Court grants the Commissioner's motion.

*BACKGROUND*

I.    Plaintiff's History of Social Security Benefits

      The history of Plaintiff's receipt of Social Security benefits is unclear. According to Plaintiff's mother, he received supplemental social security income ("SSI") from the age of seven until he was incarcerated in 2005. (Tr.[1] 41.) However, on Plaintiff's Disability Report, which is undated, he wrote that he received SSI benefits from ages seven through eighteen. The Disability Report does not mention Plaintiff applying for, or receiving, disability benefits between 1999 (the year he turned 18) and 2005 (the year he was incarcerated). (Tr. 143.) The

---

[1] "Tr." refers to the administrative transcript, which largely consists of the record considered by Administrative Law Judge ("ALJ") Mark Solomon. (Dkt. 8.)

parties do not present any evidence that Plaintiff received benefits during this period of time.[2] As discussed *infra*, in 2011, Plaintiff filed applications for disability insurance benefits ("DIB") and SSI.

II.     The Administrative Record

   A. Evidence from Plaintiff

Plaintiff was born in 1981, and obtained a high school education through a special education program. (Tr. 30.) In 1988, when Plaintiff was seven years old, he shot himself in the right eye with a pellet gun; he was blinded in that eye and has since worn a glass right eye. He worked part–time as a stock clerk in a clothing store from November 2003 to March 2004. (Tr. 31, 139–41, 173.) As of 2013, he lived with his girlfriend and their three-year-old daughter, though he also spent time with his mother. (Tr. 33, 39–40.)

Plaintiff wears glasses and administers prescription eye drops and cream, though, at times, it has been financially burdensome for him to purchase these medications. (Tr. 31–32, 37–38, 40, 146, 152.) Plaintiff testified at the SSA appeal hearing that his right eye had severe mucus, particularly in cold weather. (Tr. 37–38, 138–39, 175.) Plaintiff also claimed to experience headaches two to three times a month, which could last for up to four hours and cause dizziness. (Tr. 38, 145, 152.) He testified he did not "really like taking like Tylenols and certain pills because I'm scared to take pills. Like I'm scared to swallow pills. So, I just let [the headache] die on its own." (Tr. 38–39.) Plaintiff had no history of treatment for any other physical condition. (*Id.*) Plaintiff was treated by a psychiatrist once in 2012, but did not

---

[2] Incarceration renders a person ineligible for Social Security benefits for the period of incarceration. 42 U.S.C.A. § 402(x); *see Zipkin v. Heckler*, 790 F.2d 16 (2d Cir. 1986). If a person is incarcerated for fewer than 12 months, benefits are "suspended" and can be reinstated. If a person is incarcerated for more than 12 months, benefits are terminated, and the person must reapply after his or her release. *See* www.ssa.gov/pubs/EN–05–10133.pdf (last visited on 7/22/15).

continue treatment because the psychiatrist "felt like there was nothing wrong with me, you know." (Tr. 32.) Plaintiff stated that he was able to ride on a bus or the subway by himself, though he also alleged that, at times, he forgot where he was going due to memory loss caused by the pellet gun bullet fragment located inches from his brain. (Tr. 33, 147, 152.) Plaintiff's mother testified that his doctors determined that it was too dangerous to attempt to surgically remove the fragment. (Tr. 41.)

Plaintiff testified that he was able to cook/microwave meals (about half of his daily meals), tend to his personal needs, dress himself, bathe, feed himself, clothe himself, shave, do laundry, sweep, mop, iron, pay bills, count change, handle a savings account, and shop for clothing (once a month). (Tr. 33, 36, 146–48.) He also stated that was able to care for his three-year-old daughter, including playing with, feeding, and bathing her, while his girlfriend worked. Plaintiff's girlfriend stopped working in June or July 2012. (Tr. 33–34.) Plaintiff indicated that he liked to watch television, go to the movies, and read magazines, newspapers, and books. (Tr. 35, 148–49.) Plaintiff noted that he was able to attend family functions, such as birthday parties, Thanksgiving, and baby showers. (Tr. 149.) He also taught himself, using the computer, how to play chess. (Tr. 35–36.) Plaintiff testified that his right-eye blindness did not cause limitations in these activities. (Tr. 36.) He testified that he believed he could perform his past work as a stock clerk in a clothing store on a full–time basis. (*Id.*)

B. Medical Evidence

On January 9, 2012, Benjamin Kropsky, M.D., performed a consultative physical examination of Plaintiff. (Tr. 187–90.) On the evaluation form, Plaintiff stated that he had lost his eyesight in his right eye at age seven, and that he wore a right-eye prosthesis and, at times, had drainage from that area. (*Id.*) Plaintiff reported that his left–eye vision was good, but

occasionally slightly blurry. (*Id.*) Plaintiff claimed difficulty with memory since the bullet wound. (*Id.*) He alleged no limitation in walking and climbing. (*Id.*) Plaintiff reported that he started smoking up to one package per day of cigarettes at age 14 and now smoked a half–package per day. (*Id.*) Plaintiff indicated on the form that he started using marijuana at age 14. (*Id.*) He stated that he "still occasionally uses marijuana," but denied the use of other street drugs. (*Id.*) He denied the use of alcohol. (*Id.*) Plaintiff stated that he was able to take care of his child, and clean, shower, bathe, and dress himself on a daily basis. (*Id.*) He also stated that he was able to cook, do laundry, and shop. (*Id.*) Plaintiff stated that he enjoyed watching TV, listening to the radio, reading, and playing basketball. (*Id.*)

According to Dr. Kropsky's report, Plaintiff appeared in no acute distress. (Tr. 188.) His gait was normal and he could walk on his heels and toes without difficulty and without the use of an assistive device, such as a cane. (*Id.*) Plaintiff needed no help changing for the examination or getting on and off the examination table. (*Id.*) He was able to rise from a chair without difficulty. (*Id.*) He had a prosthesis in his right eye, and his left eye appeared normal. (*Id.*) Examination of the chest, lungs, heart, and abdomen was normal, and the musculoskeletal examination was normal with full range of motion and no pain or tenderness. (Tr. 188–89.) The neurological examination was normal with physiologic and equal deep tendon reflexes in the upper and lower extremities, no sensory deficit noted, and strength of 5/5 in the upper and lower extremities. (Tr. 189.) Plaintiff had intact hand and finger dexterity. (*Id.*) His bilateral grip strength was normal (5/5). (*Id.*) Dr. Kropsky diagnosed loss of right eye with replacement of prosthesis and memory problems. (Tr. 188.) Dr. Kropsky assessed that Plaintiff was "limited for activities which require fine bilateral vision because of the loss of the right eye" but had "no other physical limitations." (Tr. 189.) Dr. Kropsky called for a mental consultation to address

Plaintiff's alleged memory problems, which was carried out by Dr. Angela Fairweather the same day. (*Id.*)

On January 9, 2012, Angela Fairweather, Ph.D., performed a consultative psychiatric evaluation of Plaintiff. (Tr. 183–86.) Plaintiff indicated that he had arrived at the location of the examination by train. (Tr. 183.) He was currently living with his girlfriend. (*Id.*) He had a General Education Degree ("GED") and had been placed in special education classes for behavioral problems as a child. (*Id.*) He stated that he was currently unemployed but had "been looking for work." (*Id.*) Plaintiff "denied all psychiatric symptoms, but endorsed difficulties with long–term memory." (*Id.*) He stated that he had a history of traumatic brain injury. (*Id.*) He reported drinking three alcoholic beverages about once a week, but denied drug use. (*Id.*) Plaintiff reported a history of cannabis dependence, which ended in the summer of 2011. (*Id.*) Plaintiff stated that he was incarcerated in 2005 for a drug sale. (*Id.*) Plaintiff reported that he was able to dress, bathe, and groom himself, cook and prepare food, do general cleaning, do laundry, shop, manage money, and take public transportation independently. (Tr. 185.) However, he reported that he needed help with reading due to cognitive deficits and vision impairment. (*Id.*) His girlfriend assisted him when he needed help. (*Id.*) Plaintiff indicated that he had a good relationship with family members and friends. (*Id.*) He stated that he spent his days watching television, playing sports, and socializing. (*Id.*)

Dr. Fairweather noted in her written report that Plaintiff was cooperative and had adequate social skills. (Tr. 184.) His appearance was consistent with his stated age; he was dressed appropriately; his hygiene and grooming were fair; his gait, posture, and motor behavior were normal. (*Id.*) He made appropriate eye contact; his speech was fluent; his quality of voice was clear; his expressive and receptive language was adequate; and his thought process was

coherent and goal directed, with no evidence of a thought disorder. (*Id.*) His affect was tense. (*Id.*) He described his mood as euthymic (stable). (*Id.*) Plaintiff's attention and concentration were intact, as evidenced by his ability to do serial threes and simple calculations. (*Id.*) His recent and remote memory skills were impaired as evidenced by his ability to recall only two of three objects after five minutes. (*Id.*) He was able to recall three of three objects immediately and remember five digits forward and three digits backward. (*Id.*)

Dr. Fairweather believed that Plaintiff's impairments were due to limited intellectual functioning and cognitive deficits, and estimated Plaintiff's intellectual functioning to be in the borderline to below–average range. (*Id.*) According to Dr. Fairweather, Plaintiff had good insight and judgment. (Tr. 184–185.) Dr. Fairweather noted Plaintiff's former cannabis dependence (in "early full remission") and ruled out "cognitive disorder not otherwise specified ("NOS")," but acknowledged a milder form of cognitive "deficit." (Tr. 185.) Dr. Fairweather assessed that Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress. She also concluded that Plaintiff exhibited mild difficulty maintaining a regular schedule and performing complex tasks independently, due to cognitive deficits. (*Id.*)

On April 19, 2012, A. Stockton, M.D., a state psychiatric consultant, reviewed the available medical evidence (Tr. 191–200), and assessed Plaintiff as only "moderately limited" in his ability to: (1) understand, remember, and carry out detailed instructions, and; (2) complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 197–98.) In Section III of the form (labeled "Functional Capacity Assessment"), Dr. Stockton

noted the evidence that he considered, and explained that with these "moderate" limitations, Plaintiff "would be able to sustain attention and concentration, interact appropriately with coworkers and supervisors, and adapt to changes in the work environment." (Tr. 199.)

*STANDARD OF REVIEW*

I. <u>FRCP 12(c)</u>

Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP") provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FRCP 12(c). The legal standards applicable to a FRCP 12(c) motion are the same as those applied to a FRCP 12(b)(6) motion to dismiss. *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive a FRCP 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In evaluating a FRCP 12(b)(6) motion, the Court must accept all well–pleaded factual allegations of the complaint as true, and draw all reasonable inferences in favor of the non–moving party, here, Plaintiff. *Id.* at 679. Where a plaintiff proceeds *pro se*, the Court must construe the pleadings liberally and interpret them to raise the strongest arguments they suggest. *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006).

II. <u>Review of Administrative Decisions</u>

In reviewing a final decision of the Commissioner, the Court's duty is to determine whether it is based upon correct legal standards and principles, and whether it is supported by substantial evidence in the record, taken as a whole. *See Talavera v. Astrue* ("*Talavera*"), 697 F.3d 145, 151 (2d Cir. 2012) (the Court "is limited to determining whether the [Social Security

Administration's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard.") (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). "'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (alterations and internal quotation marks omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983). However, the Court is mindful that "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Under any circumstances, if there is substantial evidence in the record to support the Commissioner's findings as to any fact, they are conclusive and must be upheld. 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013).

## DISCUSSION

I.  Disability Under the Social Security Act

The Act provides that an individual is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify for Social Security Disability benefits, the claimed disability must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D); *accord Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).

The Act's regulations prescribe a five-step analysis for the Commissioner to follow in determining whether a disability benefit claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520(a); *Talavera*, 697 F.3d at 151.

First, the Commissioner determines whether the claimant currently is engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). If not, the Commissioner proceeds to the second inquiry, which is whether the claimant suffers from a medical impairment, or combination of impairments, that is "severe," meaning that the impairment "significantly limits [claimant's] physical or mental ability to do basic work activities." If the impairment is not severe, the claimant is not disabled. 20 C.F.R. §404.1520(a)(4)(ii), (c).

If the impairment is severe, the Commissioner proceeds to the third inquiry, which is whether the impairment meets or equals one of the impairments listed in Appendix 1 to Subpart P of Part 404 of the Act's regulations (the "Listings"). If so, the claimant is presumed disabled and entitled to benefits. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the Commissioner proceeds to the fourth inquiry, which is whether, despite claimant's severe impairment, he has the "residual functional capacity" ("RFC") to perform past work. 20 C.F.R. § 404.1520(a)(4)(iv). In determining a claimant's RFC, the Commissioner considers all medically determinable impairments, even those that are not "severe." 20 C.F.R. § 404.1545(a)(2). If the claimant's RFC is such that s/he can still perform past work, the claimant is not disabled. If the claimant cannot perform past work, the Commissioner proceeds to the fifth and final inquiry, which is whether, in light of the claimant's RFC, age, education, and work experience, the claimant has the capacity to make an adjustment to perform other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant has such capacity, the claimant is not disabled. If not, the claimant is disabled and

entitled to benefits. *Id.* The claimant bears the burden of proving his case at steps one through four; at step five, the burden shifts to the Commissioner to establish that there is substantial gainful work in the national economy that the claimant could perform. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).

## II. The ALJ's Decision

Birch filed an application for disability benefits on June 27, 2011. (Tr. 12.) He also filed an application for SSI on December 2, 2011. (*Id.*) Both applications alleged that his disability began on March 31, 2006.[3] (*Id.*) The application was denied, and Birch then requested an administrative hearing before an ALJ. (*Id.*)

First, the ALJ found that Birch had not engaged in substantial gainful activity since his alleged onset date. (Tr. 14.) At step two, the ALJ found that Birch's right-eye blindness and cannabis dependence in early remission were severe impairments. (*Id.*) The ALJ found that Plaintiff's alleged cognitive deficits and memory loss did not qualify as severe impairments within the meaning of the Social Security Act and Regulations. (*Id.*) At step three, the ALJ found that Birch did not have an impairment, or combination of impairments, that met or medically equaled the Listings. (*Id.*) The ALJ based this finding on the fact that Plaintiff's "severe impairments" did not result in at least two of the following: "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." (Tr. 15.)

---

[3] The Court notes that Plaintiff was still incarcerated at this time.

The ALJ then proceeded to determine Birch's RFC and found that he was able to perform a full range of work at all exertional levels but with the nonexertional limitation of being able to perform a job requiring only occasional fine bilateral vision. (Tr. 16.)

After determining Plaintiff's RFC, the ALJ asked a vocational expert ("VE") to consider a hypothetical individual, of the same age, education, and work experience as Plaintiff, with the ability to perform work-related mental and physical activities, subject to the limitation that the job could require only occasional fine bilateral vision. (Tr. 22.)

The VE testified, via telephone, that such a person would be able to perform the requirements of representative occupations such as: (1) hand packager (medium), *Dictionary of Occupational Titles* ("*DOT*") No. 920.587–018, with 3,500 jobs in the local economy and 164,000 jobs in the national economy; (2) dishwasher (medium), *DOT* No. 318.687–010, with 2,000 jobs in the local economy and 250,000 jobs in the national economy, and; (3) garment sorter (light), *DOT* No. 222.687–014, with 2,420 jobs in the local economy and 135,000 jobs in the national economy. (Tr. 45.)

The ALJ then asked the VE to consider a hypothetical individual with the same limitations as in the first scenario, but with the additional limitation of suffering headaches three times per month lasting an hour or more per day. (Tr. 46.) The VE testified that there were no jobs consistent with that hypothetical.[4] (Tr. 45–46.)

---

[4] The ALJ presented this hypothetical briefly and did not ask the VE to elaborate on her response, nor did he include this element of the VE's testimony in his decision. (Tr. 45.) As discussed *infra*, it is within the ALJ's discretion to choose to give less weight to this testimony in light of other factors. *See Zabala v. Astrue*, 595 F.3d 402, 410–11 (2d Cir. 2010) ("If a claimant has nonexertional limitations that significantly limit the range of work permitted by his exertional limitations, the ALJ is required to consult with a vocational expert") (internal citation and quotation marks omitted); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) ("The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in

On February 19, 2013, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 12.) This decision became the Commissioner's final decision after the Appeals Council denied Plaintiff's request for review on May 10, 2014. (Tr. 1–5.)

III. Analysis

  A. The ALJ's Ultimate Determination That Plaintiff Was Not Disabled Was Correct

    1. Plaintiff Has Not Been Gainfully Employed

The ALJ was correct in finding that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 31, 2006.[5] Plaintiff claims that he held one job as an adult, from 2003 through 2005, as a stock clerk at a clothing store. (Tr. 141.)

    2. Plaintiff Has More Than One "Severe Impairment"

The ALJ was correct in finding that Plaintiff's right-eye blindness constitutes a severe impairment. He also found that Plaintiff's "cannabis dependency in early remission" constitutes a severe impairment, which Plaintiff rightly notes was not "diagnosed", so much as noted by the medical professionals who examined him. (Tr. 14, 6.) However, it does not appear that the "cannabis dependency" played a significant role beyond step two of the ALJ's analysis, and certainly was not decisive in the finding that Plaintiff is not disabled. (Tr. 19.)

The ALJ was also correct in finding that Plaintiff's poor memory and cognitive defects, while no doubt problematic for Plaintiff to some extent, do not rise to the level of severity required for a finding of "severe impairment." As the ALJ notes, Plaintiff manages to engage in

---

light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.").

[5] Plaintiff notes in his Affidavit in Opposition that this onset date is incorrect. Although the March 2006 date appears to have originated in Plaintiff's first petition for SSI in 2011, it does seem that Plaintiff's disability originated on the date of his pellet gun accident at age seven, which was in 1988. (Tr. 31–32.)

12

daily activities requiring "significant levels of concentration, attention, memory, and cognitive skills." (Tr. 15.) Plaintiff discusses playing chess on the computer, reading, traveling alone on public transportation, and acting as primary caregiver for his daughter much of the time, all of which indicate that his memory and cognitive capacity are not severely impaired. (Tr. 35–36.)

3. <u>Plaintiff's Impairments Do Not Equal an Adult Mental Disorder in the Listing of Impairments</u>

The ALJ was correct in finding that, added together, the two "severe impairments" as well as Plaintiff's more minor impairments, fail to constitute a mental impairment equal in severity to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ correctly found that Plaintiff's difficulties and restrictions with respect to activities of daily living, social functioning, and concentration all rate as "mild," according to Plaintiff's testimony and his own Function Report.

Plaintiff's competence in household chores, self–care, travel via public transportation, and care for his young daughter all suggest that his activities of daily living are, at most, moderately restricted. (Tr. 15.) Plaintiff's testimony that he gets along well with friends and family, and attends social functions indicates that he experiences no more than mild difficulty in social functioning. (Tr. 149.) Similarly, Plaintiff's testimony that he reads and plays computer chess, among other things, suggests that he is capable of significant attention and concentration, indicating no more than mild difficulties in the last category. (Tr. 15.)

4. <u>The ALJ's Determination of Plaintiff's RFC Was Correct</u>

Finally, the ALJ was correct in finding that the claimant's RFC was such that he could perform a job requiring only occasional fine bilateral vision and the ability to carry out simple

instructions, make simple work-related decisions, respond appropriately to supervisors and co–workers, and appropriately adapt to changes in the work setting.

Subjective symptoms are not sufficient to establish that a person is disabled under the definition of the Social Security Act; there must be medical signs and laboratory findings showing a medical impairment that could reasonably be causing the symptoms. 20 C.F.R. §§ 404.929(a) & (b), 416.929(a) & (b). The ALJ considered objective medical evidence from experts as well as Plaintiff's own subjective reports, and decided to weigh the expert testimony more heavily than the Plaintiff's reports. (Tr. 18.)

First, the ALJ considered Plaintiff's own testimony and the claims he made on his Function Report. On one hand, the Plaintiff testified (in addition to the claims about cognitive functioning made in Section 2 above) that he had previously worked part–time stocking and folding clothing in a clothing store, and that he thought he could do that work full–time if it was available. (Tr. 36.) He also testified that he was the primary caretaker for his young daughter, and that he could cook, clean, shop, and do laundry, as well as engage in recreational activities like board games. (Tr. 34, 149.) On the other hand, he reported occasional headaches and poor memory on his Function Report, and stated at the hearing that his childhood head injury had resulted in headaches lasting several hours, several times per month.[6] (Tr. 38.)

Next, the ALJ considered Dr. Fairweather's psychiatric evaluation of Plaintiff. (Tr. 17.) Dr. Fairweather opined that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, learn

---

[6] Plaintiff mentioned headaches in his testimony to the ALJ (Tr. 38), and in a section of his Function Report concerning conditions affecting sleep (Tr. 145), but did not list headaches among eight "physical or mental conditions" on his Disability Report (Tr. 139). No mention of headaches appears in the reports by Drs. Fairweather, Kropsky, or Stockton. (Tr. 183–186, 187–190, 191–206).

new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with work–related stress. (*Id.*) She also found that Plaintiff would have mild difficulties with maintaining a regular schedule and performing complex tasks independently. (*Id.*)

Finally, the ALJ considered the physiological examination performed by Dr. Kropsky, M.D., an internist. (Tr. 18.) Dr. Kropsky found nothing remarkable in his examination, except for Plaintiff's right-eye blindness and some memory difficulties as reported by Plaintiff. (*Id.*)

Based on the objective medical expert reports, much of which was consistent with Plaintiff's subjective self-reports, the ALJ correctly assessed Plaintiff's RFC as permitting him to perform past work.

5. <u>Jobs Are Available to Individuals with Plaintiff's Capabilities</u>

After considering the VE's evaluation of a hypothetical worker of the same age, education, work experience, and residual functional capacity as Plaintiff, the ALJ was correct in finding that Plaintiff could perform work that exists in significant numbers in the national economy, including the representative occupations of hand packager, dishwasher, and garment sorter.[7]

---

[7] Although the ALJ did not include it in his final report, the VE testified that a person whose limitations included the severe headaches described by Plaintiff might not be able to perform any work that exists in substantial numbers in the national economy. The ALJ appears to have omitted this part of the testimony from his report because Plaintiff's description of his headaches is purely subjective and uncorroborated by the report of any medical professional, making it the type of symptom that the ALJ may choose to credit or not, at his discretion. The Court also notes that, though claiming to suffer from these reportedly severe headaches, Plaintiff chose not to take medication to mitigate their effects, purportedly due to a fear of taking pills. (Tr. 38–39.) Since Plaintiff mentioned the headaches only when prompted, and omitted them from several self-reported medical documents, the ALJ's exercise of his discretion to discount these subjective, medically uncorroborated reports was reasonable.

*CONCLUSION*

Based on the foregoing, the Court finds that the ALJ applied the correct legal standards and did so in the correct manner, and that the ALJ's conclusions of law and findings of fact are supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings pursuant to FRCP 12(c) is granted in its entirety, and the ALJ's decision is affirmed. The Clerk of Court is respectfully directed to terminate this matter.

SO ORDERED:

  /s Pamela K. Chen  
PAMELA K. CHEN  
United States District Judge

Dated: July 31, 2015  
Brooklyn, New York